**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Theodore R. NANCE, Defendant–
Appellant.**

**No. 91–30193.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 6, 1992 *.

Decided April 16, 1992.

As Amended May 18, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Charles J. Wiseman, Portland, Or., for defendant-appellant.

Robert B. Ross, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before: BROWNING, WRIGHT and FERNANDEZ, Circuit Judges.

PER CURIAM:

## I. Background

On June 28, 1990, Theodore Nance agreed to buy cocaine from an undercover officer working with a drug task force composed of state and local police and United States Customs Service agents. The officer then accompanied Nance to his pick-up truck in a motel parking lot. Nance was arrested as he stood by his truck after he showed the officer the money for the cocaine purchase. The truck was then seized and driven to an impound lot.

Agent Lawson of the Customs Service, who was present during the arrest, telephoned another detective and gave him an account of the events of the evening. The second detective called a state judge at about 3 a.m. to apply for a search warrant on the basis of an oral affidavit, in accordance with Oregon Revised Statute section 133.545(5). The judge approved a warrant to search Nance's home and vehicles, including the pickup, for money, weapons, drugs, drug records and other drug related paraphernalia. He authorized execution of the warrant at "any time of the day or night."

Search of a zippered overnight bag in the truck yielded a pistol, cocaine, and drug equipment. The search of Nance's home disclosed more firearms, cocaine, and drug equipment.

After the United States Attorney's Office decided to prosecute Nance for federal crimes, state charges were dropped. Nance filed a suppression motion in federal court claiming that his truck had been searched illegally before the telephonic warrant was issued and that the warrant was invalid. His motion was denied. Reserving his right to appeal, Nance pled guilty to conspiring to possess cocaine with intent to distribute and to using and carrying a firearm in relation to a drug trafficking offense. Nance moved the court to disregard the federal sentencing guidelines because the drug task force had violated his due process rights by referring his case for federal prosecution. The district court denied the motion. Nance appeals the denial of both motions.

## II. Denief of Suppression Motion

We review denial of Nance's suppression motion de novo, see United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988), but accept the underlying factual findings unless clearly erroneous, United States v. Davis, 905 F.2d 245, 250 (9th Cir.1990).

### A. Alleged Warrantless Search of Truck

Nance contends that before the warrant issued, his jacket was seized in a warrantless search of his truck. Lawson testified without contradiction that Nance was next to the open door of his truck, holding his jacket in his hand, when he was arrested. A large amount of cash was sticking out of the jacket pocket. When Nance was told to put his arms up, he dropped the coat, which landed partly on the truck seat and partly across the door frame. Lawson then either moved the jacket farther into the truck or put it into a police car and it was taken to the local police station.

According to this testimony, anyone in the parking lot at the time of the arrest could have seen the jacket and the money jutting from it. The mere observation of the jacket and money was not a search within the meaning of the Fourth Amendment. See Texas v. Brown, 460 U.S. 730,

740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) (plurality opinion); *see also United States v. Washington,* 797 F.2d 1461, 1469 (9th Cir.1986) (seizure of property in plain view involves no invasion of privacy and is "presumptively reasonable" assuming probable cause to associate property with criminal activity). The district court did not clearly err in holding the truck had not been searched, with or without a warrant, when the jacket was seized.

■ Nance also contends the police must have found the pistol in his bag during a warrantless search of his truck because he was booked on a weapons charge before the warrant issued. However, Nance was charged with possessing a weapon because he had told the undercover officer from whom he had agreed to buy cocaine that he had a gun in his bag, which was in his truck. An informant traveling with Nance had also told the officer he had seen Nance with a gun that was in a suitcase in the bed of the pickup. Further, the government's witnesses stated unequivocally the truck was not searched before the warrant was issued. The district court did not clearly err in finding there was no warrantless search of the truck.

## B. Validity of Warrant

Nance claims the evidence found in his home and truck should have been suppressed because the warrant supporting the searches was invalid. First, he maintains that when a telephonic search warrant is issued pursuant to oral affidavit, the oral statement must be recorded and transcribed and the transcript certified by the issuing judge. Nance contends there is no evidence that the recorded transcript was ever presented to the judge and certified.

■ Oregon law does require the issuing judge to certify the transcribed statement.[1] The district judge found that the issuing state judge did so in mid-December of 1990. That finding was not clearly erroneous. The record contains a transcript of the oral affidavit, with the notation "12–12–90 Read & Reviewed" and the initials of the issuing judge appearing on each page.[2]

■ Nance further argues the warrant was invalid under the Oregon statute that requires execution of warrants outside the hours of 7 a.m. to 10 p.m. to be authorized by endorsement upon the face of the warrant.[3] He contends that although the judge orally authorized execution at any time of the day or night, the warrant was actually endorsed by the detective who, with the judge's permission, checked the box that allowed service at any time.

It would be anomalous to find the Oregon legislature recognized exigent circumstances could justify the issuance of a telephonic warrant, yet still required the issuing judge personally to check the box permitting after-hours execution. Further, the Oregon courts have recognized that

1. Oregon Revised Statute section 133.545(5) provides in pertinent part:

   Instead of [a] written affidavit ..., the judge may take an oral statement under oath when circumstances exist making it impracticable ... to obtain a warrant in person. The oral statement shall be recorded and transcribed.... [and] considered to be an affidavit.... In such cases, the recording of the sworn oral statement and the transcribed statement shall be certified by the judge receiving it and shall be retained as a part of the record of proceedings for the issuance of the warrant.

2. Although the telephonic warrant was issued in June and the transcript not certified until December, the statutory provision requiring certifi-

cation does not prescribe any time limits. A delay between issuance and certification does not require suppression. *See, e.g., State v. Evans,* 110 Or.App. 46, 822 P.2d 1198, 1203 (1991).

3. Oregon Revised Statute section 133.565(3) provides:

   Except as otherwise provided herein, the search warrant shall be executed between the hours of 7 a.m. and 10 p.m. and within five days from the date of issuance. The judge issuing the warrant may, however, by indorsement upon the face of the warrant, authorize its execution at any time of the day or night and may further authorize its execution after five days, but not more than 10 days from date of issuance.

while an extension of the statute's five day limit for service requires authorization by endorsement upon the face of the warrant, failure to obtain the issuing judge's endorsement does not require suppression of the evidence found in the search. *See State v. Whalen,* 750 P.2d 1168, 1169–70 (Or.Ct.App.1988). We see no reason to assume a different rule would apply when the endorsement required is for late-night service.

■ Finally, Nance argues the warrant was invalid because it was not supported by probable cause. We review *de novo* the district court's determination there was probable cause, but review for clear error the underlying factual findings. *United States v. Smith,* 790 F.2d 789, 791 (9th Cir.1986).

The oral affidavit submitted in support of the warrant contained the following information: The affiant was a state police officer with significant experience in narcotics investigation. In November of 1989, a confidential informant made two controlled buys from Nance. On each occasion, Nance came from his home, where the drugs were stored. The same informant told the affiant that in February of 1990, there had been several attempted burglaries at Nance's home to steal the cocaine kept there. Police responded to a gun battle that ensued after one of the attempts. A second informant went with Nance to make the cocaine purchase that resulted in his arrest. Nance told that informant, as well as the undercover officer posing as the seller, about his extensive drug distribution activities. The affiant also knew, based on surveillance and the informants' information, that Nance used three vehicles, including his pickup, to distribute drugs, and further knew, based on his experience and training, that people who distribute narcotics keep drug supplies, paraphernalia, records and weapons in their homes.

Nance contends the informants' information was too stale to supply probable cause. However,

> [a] search warrant is not stale where "there is sufficient basis to believe, based on a continuing pattern or other

good reasons, that the items to be seized are still on the premises." With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity.

*United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986) (citation omitted); *see also United States v. Foster,* 711 F.2d 871, 878–79 (9th Cir.1983) (where information suggested defendant "was in the business of selling" drugs, finding of probable cause was proper even though drug sale to which defendant was linked occurred three months earlier). In this case, the warrant was supported by information received the night it was issued indicating Nance was still in the business of selling drugs. This information, together with the information received earlier, established probable cause to support the warrant.

### III. Use of Federal Sentencing Guidelines

■ Nance argues his due process rights were violated when the task force referred his case for federal rather than state prosecution without the benefit of a neutral written policy governing such referrals. He relies on *United States v. Williams,* 746 F.Supp. 1076 (D.Utah 1990) (due process required neutral policy by which task force would determine which cases to refer for federal prosecution). The appropriate remedy, he claims, is resentencing pursuant to state, rather than federal, sentencing guidelines. *See id.* at 1083. Assuming but not deciding Nance's argument survived his guilty plea, we find it without merit.

■ The Tenth Circuit rejected *Williams* in *United States v. Andersen,* 940 F.2d 593 (10th Cir.1991). The *Andersen* court reasoned that although task force recommendations "[u]ndoubtedly … have some influence on charging decisions[,].... [t]he ultimate decision whether to charge a defendant, and what charges to file, … rests solely with state and federal prosecutors." *Id.* at 597. Prosecutorial decisions on whether and what to charge are almost completely discretionary:

Although a prosecutor obviously cannot base charging decisions on a defendant's race, sex, religion, or exercise of a statutory or constitutional right, *see Wayte v. United States*, 470 U.S. 598, 608 [105 S.Ct. 1524, 84 L.Ed.2d 547] (1985), "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file ... generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (footnote omitted).

*Id.* at 596 (parallel citations omitted); *see also United States v. Sanchez*, 908 F.2d 1443, 1445 (9th Cir.1990). Unless a defendant can prove that the decision to initiate federal prosecution is arbitrary, capricious, or based on race, religion, gender, or similar suspect characteristics, *see United States v. Redondo-Lemos*, 955 F.2d 1296, 1299, 1301 (9th Cir.1992), there are no grounds for finding a due process violation, even when the motive for federal prosecution is that harsher sentences are possible. " '[T]he prosecutor may be influenced by the harsher penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause.' " *Andersen*, 940 F.2d at 596 (quoting *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2204-05, 60 L.Ed.2d 755 (1979)).

We agree with the Tenth Circuit, as do at least three other circuits. *See United States v. Carter*, 953 F.2d 1449, 1462 (5th Cir.1992); *United States v. Parson*, 955 F.2d 858, 873-74 n. 22 (3d Cir.1992); *United States v. Allen*, 954 F.2d 1160, 1166 (6th Cir.1992). Nance's due process rights were not violated by the referral of his case for federal prosecution.

Further, even if we detected a due process violation, recent decisions of this court would require us to hold that absent proof of discrimination based on suspect characteristics, we may not review charging decisions made by prosecutors. *See Redondo-Lemos*, at 1300-01; *United States v. Diaz*, 961 F.2d 1417, 1420 (9th Cir.1992) ("although a defendant has a due process right to be free of arbitrary or capricious charging decisions, there is no judicial remedy to correct such violations").

AFFIRMED.